**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.

UNITED STATES OF AMERICA,

      Plaintiff,

v.

CONSUMER EDUCATION.INFO, INC. also d/b/a Consumer Outreach, a Missouri corporation;
DHM MEDIA, INC., a Colorado corporation;
EPATH LIVE LLC, a Missouri limited liability corporation;
WEBNET CONSULTING, INC. also d/b/a ePath Media, a California corporation;
WILLIAM R. BASKIN, individually and as an officer of Consumer Education.info, Inc. also d/b/a Consumer Outreach, ePath Live LLC, and WebNet Consulting, Inc. also d/b/a ePath Media;
JEREMY BUTTKE, individually and as an officer of Consumer Education.info, Inc. also d/b/a Consumer Outreach, ePath Live LLC, and WebNet Consulting Inc. also d/b/a ePath Media;
TETSUYA KOSAKA, individually and as an officer of Consumer Education.info, Inc. also d/b/a Consumer Outreach, ePath Live LLC, and WebNet Consulting Inc. also d/b/a ePath Media, and
JEFFREY L. RANDOL, individually and as an officer of Consumer Education.info, Inc. also d/b/a Consumer Outreach and of ePath Live LLC and as an officer and sole shareholder of DHM Media Inc.;

      Defendants.

---

**COMPLAINT FOR CIVIL PENALTIES, PERMANENT INJUNCTION, AND OTHER RELIEF**

---

Plaintiff, the United States of America, acting upon notification and authorization to the Attorney General by the Federal Trade Commission ("FTC" or "Commission"), pursuant to Section 16(a)(1) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 56(a)(1), for its complaint alleges:

1.      Plaintiff brings this action under Sections 5(a), 5(m)(1)(A), 13(b), 16(a), and 19 of the FTC Act, 15 U.S.C. §§ 45(a), 45(m)(1)(A), 53(b), 56(a), and 57b, and Section 6 of the

Telemarketing and Consumer Fraud and Abuse Prevention Act (the "Telemarketing Act"), 15 U.S.C. § 6105, to obtain monetary civil penalties, a permanent injunction, and other relief for Defendants' violations of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), and the FTC's Telemarketing Sales Rule (the "TSR" or "Rule"), as amended, 16 C.F.R. Part 310.

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1337(a), 1345, and 1355, and 15 U.S.C. §§ 45(m)(1)(A), 53(b), and 56(a). This action arises under 15 U.S.C. § 45(a).

3. Venue is proper in this District under 28 U.S.C. §§ 1391(b)(2), 1391(c)(1), 1391(c)(2) and 1395(a), and 15 U.S.C. § 53(b). Defendants reside in or transact business in this District.

## DEFENDANTS

4. **Defendant Consumer Education.info, Inc. also d/b/a Consumer Education Outreach** ("Consumer Education") is a Missouri company with its principal place of business at 1049 Main Street, Windsor, Colorado 80550. Consumer Education is a telemarketer that initiates outbound telephone calls on behalf of third parties to induce consumers to purchase solar panels and walk-in bathtubs, among other things. Consumer Education transacts or has transacted business in this district and throughout the United States.

5. **Defendant DHM Media, Inc.** ("DHM") is a Colorado company with its principal place of business at 1049 Main Street, Windsor, Colorado 80550. DHM owns 25% of the

outstanding shares of ePath Live.  DHM transacts or has transacted business in this district and throughout the United States.

6.        **Defendant ePath Live, LLC** ("ePath Live") is a Missouri company with its principal place of business at 1049 Main Street, Windsor, Colorado 80550. Consumer Education is a wholly owned subsidiary of ePath Live. ePath Live transacts or has transacted business in this district and throughout the United States.

7.        **Defendant WebNet Consulting, Inc. also d/b/a ePath Media** ("WebNet") is a California company with its principal place of business at 31642 South Coast Road, Laguna Beach, California 92672.  WebNet transacts or has transacted business in this district and throughout the United States.

8.        **Defendant William R. Baskin** is the Chief Executive Officer of Consumer Education, ePath Live and WebNet. Baskin owns 33.3% of the shares of WebNet and 25% of the shares of ePath Live. In connection with the matters alleged herein, Baskin has transacted business in this District. At all times material to this Complaint, acting alone or in concert with others, Baskin has had the authority and responsibility to prevent or correct unlawful telemarketing practices of Consumer Education, ePath Live and WebNet and has formulated, directed, controlled, or participated in the acts and practices of Consumer Education, ePath Live and WebNet including the acts and practices set forth in this Complaint.

9.        **Defendant Jeremy Buttke** is the President of WebNet and of ePath Live. Buttke owns 33.3% of the shares of WebNet and 25% of the shares of ePath Live.  In connection with the matters alleged herein, Buttke has transacted business in this District. At all times material to this Complaint, acting alone or in concert with others, Buttke has had the

authority and responsibility to prevent or correct unlawful telemarketing practices of Consumer Education, ePath Live, WebNet and has formulated, directed, controlled, or participated in the acts and practices of Consumer Education, ePath Live and WebNet including the acts and practices set forth in this Complaint.

10.     **Defendant Tetsuya Kosaka** is the Treasurer and Chief Operating Officer of WebNet and the Treasurer of ePath Live.  Kosaka owns 33.3% of the shares of WebNet and 25% of the shares of ePath Live.  In connection with the matters alleged herein, Kosaka has transacted business in this District.  At all times material to this Complaint, acting alone or in concert with others, Kosaka has had the authority and responsibility to prevent or correct unlawful telemarketing practices of Consumer Education, ePath Live and WebNet, and has formulated, directed, controlled, or participated in the acts and practices of Consumer Education, ePath Live and WebNet including the acts and practices set forth in this Complaint.

11.     **Defendant Jeffrey L. Randol** is the Secretary of ePath Live, the manager of Consumer Education and the Chief Executive Officer and sole shareholder of DHM. In connection with the matters alleged herein, Randol resides in or has transacted business in this District. At all times material to this Complaint, acting alone or in concert with others, Randol has had the authority and responsibility to prevent or correct unlawful telemarketing practices of Consumer Education and of ePath Live, and has formulated, directed, controlled, or participated in the acts and practices of Consumer Education and of ePath Live including the acts and practices set forth in this Complaint.

12. At all times relevant to this complaint, Defendants have maintained a substantial course of trade or business in marketing goods or services via the telephone, in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

## COMMON ENTERPRISE

13. Defendants Consumer Education, ePath Live, WebNet and DHM ("Corporate Defendants") have operated as a common enterprise while engaging in the unlawful acts and practices alleged below. Defendants have conducted the business through an interrelated network of companies that have common ownership, managers, employees, business functions, and office locations, and that commingled funds. Because these Corporate Defendants have operated as a common enterprise, each of them is jointly and severally liable for the acts and practices alleged below. Defendants Baskin, Buttke, Kosaka and Randol have formulated, directed, controlled, had the authority to control, or participated in the acts and practices of the Corporate Defendants that constitute the common enterprise.

## THE TELEMARKETING SALES RULE AND THE NATIONAL DO NOT CALL REGISTRY

14. Congress directed the Commission to prescribe rules prohibiting abusive and deceptive telemarketing acts or practices pursuant to the Telemarketing Act, 15 U.S.C. §§ 6101-6108. The Commission adopted the original TSR in 1995, extensively amended it in 2003, and amended certain provisions thereafter. 16 C.F.R. Part 310.

15. Among other things, the 2003 amendments to the TSR established a do-not-call registry, maintained by the Commission (the "National Do Not Call Registry" or "Registry"), of consumers who do not wish to receive certain types of telemarketing calls. Consumers

can register their telephone numbers on the Registry without charge either through a toll-free telephone call or over the Internet at donotcall.gov.

16.     Consumers who receive telemarketing calls to their registered numbers can complain of Registry violations the same way they registered, through a toll-free telephone call or over the Internet at donotcall.gov, or by otherwise contacting law enforcement authorities.

17.     The FTC allows sellers, telemarketers, and other permitted organizations to access the Registry over the Internet at telemarketing.donotcall.gov, to pay the fee(s) if required, and to download the numbers not to call.

18.     Under the TSR, a "telemarketer" means any person who, in connection with telemarketing, initiates or receives telephone calls to or from a customer or donor. 16 C.F.R. § 310.2(ff). A "seller" means any person who, in connection with a telemarketing transaction, provides, offers to provide, or arranges for others to provide goods or services to the customer in exchange for consideration. *Id.* § 301.2(dd).

19.     Under the TSR, an "outbound telephone call" means a telephone call initiated by a telemarketer to induce the purchase of goods or services or to solicit a charitable contribution. 16 C.F.R. § 310.2(x).

20.     The TSR prohibits sellers and telemarketers from initiating an outbound telephone call to numbers on the Registry unless the seller (1) has obtained the consumer's express agreement, in writing, to place such calls, or (2) has an established business relationship with that consumer, and the consumer has not stated that he or she does not wish to receive such calls. 310.4(b)(1)(iii)(B). Valid written consent to receive a live telemarketing call to a

number on the Registry requires: (i) a writing signed by the consumer, (ii) clearly evidencing authorization to receive calls placed on behalf of a specific seller, and (iii) stating the phone number to which such calls may be placed.  16 C.F.R. § 310.4(b)(1)(iii)(B)(1).

21.     The TSR prohibits sellers and telemarketers from initiating an outbound telephone call that delivers a prerecorded message ("robocall"), unless the seller has obtained the consumer's express agreement, in writing, to receive such calls.  16 C.F.R. § 310.4(b)(1)(v). Such express agreement must include: (1) a clear and conspicuous disclosure that the purpose of the agreement is to authorize the seller to place prerecorded calls to such person; (2) that the seller did not require the agreement to be executed as a condition of purchasing a good or service; (3) the specific seller the consumer is authorizing to make robocalls; and (4) the consumer's telephone number and signature.  16 U.S.C. 310.4(b)(1)(v)(A)(i)-(iv).

22.     The TSR prohibits sellers and telemarketers from calling any telephone number within a given area code unless the seller on whose behalf the call is made has paid the annual fee for access to the telephone numbers within that area code that are included in the Registry.  16 C.F.R. § 310.8.

23.     Pursuant to Section 3(c) of the Telemarketing Act, 15 U.S.C. § 6102(c), and Section 18(d)(3) of the FTC Act, 15 U.S.C. § 57a(d)(3), a violation of the TSR constitutes an unfair or deceptive act or practice in or affecting commerce, in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## DEFENDANTS' BUSINESS PRACTICES

24.     Defendants are "telemarketers" engaged in "telemarketing" as those terms are defined in the TSR.

25.     Defendants initiated outbound telephone calls to consumers in the United States to induce the purchase of solar panels and other goods and services.

26.     Defendants have engaged in telemarketing by a plan, program, or campaign conducted to induce the purchase of solar panels and other goods and services by the use of one or more telephones and which involves more than one interstate telephone call.

27.     As part of its campaign to market solar panels and other goods and services, Defendants created websites and landing pages that offered consumers the opportunity to complete an on-line form and obtain additional information from an identified company or companies on a single topic such as solar panels or reverse mortgages.

28.     As part of its campaign to market solar panels and other goods and services, Defendants initiated over two million outbound telemarketing calls to phone numbers obtained from consumers who completed the on-line forms and who had previously registered their phone numbers on the Do Not Call Registry.  However, many of the calls made by Defendants were on behalf of entities whose names were not previously identified to consumers who completed Defendants' on-line forms.  Additionally, in numerous instances, consumers who filled out and submitted Defendants' on-line forms received calls concerning goods and services other than the ones for which they filled out the on-line forms.  For example, consumers who filled out an on-line form about solar panels received calls about a variety of unrelated products that they had not inquired about, such as reverse mortgages and walk-in bathtubs.

29.     Additionally, as part of its campaign to market solar panels and other goods and services, Defendants initiated outbound calls that delivered prerecorded messages ("robocalls") to millions of consumers.

30.     The messages consumers heard when they answered these calls directed them to press "3" to determine if they were qualified to receive a residential solar system with no out-of-pocket expenses. Consumers who pressed "3" were transferred to a telemarketer who worked for Defendants.

31.     During the live portion of the calls, Defendants' telemarketers would ask consumers questions based on the nature of the particular campaign including whether they were interested in purchasing a product such as solar panels.

32.     Consumers who expressed interest in solar panels or additional information were then told by Defendants' telemarketers that they would be called back shortly.

33.     Defendants' telemarketers uploaded the consumers' name and phone number into their on-line sales lead database and then sold the information to third parties.

34.     The third parties paid Defendants a fee for every lead they purchased from Defendants.

35.     Defendants made no efforts to prevent their robocalls and live telemarketing calls from being placed to telephone numbers on the National Do Not Call Registry.

36.     Consequently, Defendants made many calls to telephone numbers on the National Do Not Call Registry.

37. Consumers who received Defendants' robocalls had not given express written consent to receive robocalls specifically from Defendants.

38. Consumers whose telephone numbers were on the National Do Not Call Registry and who received Defendants' live telemarketing calls did not have a pre-existing business relationship with Defendants nor had they given express written consent to receive telemarketing calls specifically from Defendants or from the third-parties to whom Defendants sold the sales leads.

39. Defendants received many complaints from consumers who complained that their telephone numbers were on the National Do Not Call Registry and they had not given Defendants permission to call them.

40. Defendants received many complaints from consumers who complained that they had not given permission to receive robocalls from Defendants.

## VIOLATIONS OF THE TELEMARKETING SALES RULE

### Count I

### Calls to Persons Registered on the National Do Not Call Registry

41. In numerous instances, in connection with telemarketing, Defendants have initiated or caused others to initiate an outbound telephone call to a person's telephone number on the National Do Not Call Registry in violation of the TSR.  16 C.F.R. § 310.4(b)(1)(iii)(B).

### Count II

### Initiating Unlawful Prerecorded Messages

42.     In numerous instances, in connection with telemarketing, Defendants have made or caused others to make, outbound telephone calls that delivered prerecorded messages to induce the purchase of goods or services when the persons to whom these telephone calls were made had not signed an express agreement, in writing, authorizing the seller to place prerecorded calls to such person, in violation of the TSR.  16 C.F.R. § 310.4(b)(1)(v)(A).

### **CONSUMER INJURY**

43.     Consumers in the United States have suffered and will suffer injury as a result of Defendants' violations of the TSR.  Absent injunctive relief by this Court, Defendants are likely to continue to injure consumers and harm the public interest.

### **THIS COURT'S POWER TO GRANT RELIEF**

44.     Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), empowers this Court to grant injunctive and other ancillary relief to prevent and remedy any violation of any provision of law enforced by the FTC.

45.     Section 5(m)(1)(A) of the FTC Act, 15 U.S.C. § 45(m)(1)(A), as modified by Section 4 of the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended, and as implemented by 16 C.F.R. § 1.98(d), authorizes this Court to award monetary civil penalties of up to $40,000 for each violation of the TSR, 16 C.F.R. § 1.98(d). Defendants' violations of the TSR were committed with the knowledge required by Section 5(m)(1)(A) of the FTC Act, 15 U.S.C. § 45(m)(1)(A).

46.     This Court, in the exercise of its equitable jurisdiction, may award ancillary relief to remedy injury caused by Defendants' violations of the TSR and the FTC Act.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff requests that this Court, as authorized by Sections 5(a), 5(m)(1)(A), and 13(b) of the FTC Act, 15 U.S.C. §§ 45(a), 45(m)(1)(A), 53(b), and pursuant to its own equitable powers:

A.      Enter judgment against Defendants and in favor of Plaintiff for each violation alleged in this complaint;

B.      Award Plaintiff monetary civil penalties from each Defendant for every violation of the TSR;

C.      Enter a permanent injunction to prevent future violations of the TSR and the FTC Act by Defendants, and

D.      Award Plaintiff the costs of bringing this action, as well as such other and additional relief as the Court may determine to be just and proper.

Dated: November 1, 2016

FEDERAL TRADE COMMISSION

OF COUNSEL:

CHARLES A. HARWOOD
Regional Director
Northwest Region
Jennifer Larabee, CA #163989
Nadine Samter, WA #23881
Attorneys
Federal Trade Commission
Northwest Region
915 Second Avenue, Suite 2896
Seattle, Washington 98174
(206) 220-6350 (main)
(206) 220 6366 (facsimile)
jlarabee@ftc.gov, nsamter@ftc.gov

Respectfully submitted,

FOR THE UNITED STATES OF AMERICA

BENJAMIN C. MIZER
Principal Deputy Assistant Attorney General
Civil Division
U.S. DEPARTMENT OF JUSTICE

BOB TROYER
Acting United States Attorney

MICHAEL S. BLUME
Director
Consumer Protection Branch
U.S. DEPARTMENT OF JUSTICE

*/s/ Raquel Toledo*
Raquel Toledo, PA #321175
Trial Attorney
Consumer Protection Branch
U.S. Department of Justice
P.O. Box 386
Washington, DC 20044
(202) 532-4719 (direct)
(202) 514-8742 (facsimile)
Raquel.Toledo@usdoj.gov